#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GEICO ADVANTAGE** : | | |
| **INSURANCE COMPANY, ET AL.** : | | |
| : | **CIVIL ACTION** | |
| v. : | **No. 24-2554** | |
| : | | |
| **PAULA WETZEL, ET AL.** : | | |

**McHUGH, J.**                                                                                                                                    **May 7, 2025**

### MEMORANDUM

    This case arises out of a tragic automobile accident resulting in the death of Alexander Wetzel.  Under Pennsylvania law, a fatal accident gives rise to two distinct but interrelated claims: a claim on behalf of the victim's estate, known as a survival action, and a claim on behalf of designated statutory beneficiaries, known as a wrongful death action.  The claimants here are the parents of the deceased, Paula and Edwin Wetzel, who are eligible beneficiaries under both actions arising out of their son's death.  Their son was covered by a policy of underinsured motorist benefits at the time of his death, which specified a limit payable per "person" for injuries resulting from an accident.  The question presented is whether that limit applies separately to each of the two claims asserted here.  Given that both the wrongful death and survival claims arise out of the death of the victim insured under the policy, and the language of the controlling provisions, I am constrained to enforce the limit on coverage and grant summary judgement in favor of the insurer.

**I.**     **Relevant facts**

To facilitate resolution of this dispute, the parties have stipulated to the controlling facts.  ECF 20.

The policy was issued to Ms. Paula Wetzel by GEICO Advantage Insurance Company. GEICO agrees that her son was an insured when operating the vehicle. The endorsement for underinsured (UIM) benefits provides the following coverage:

> **LOSSES WE PAY**
>
> Under this coverage, we will pay damages for *bodily injury* caused by an accident which the *insured* is legally entitled to recover from the owner or operator of an *underinsured motor vehicle* arising out of the ownership, maintenance or use of that motor vehicle. The *bodily injury* must be sustained by the *insured*.

Exhibit "B" to Joint Stipulation of Facts, Underinsured Motorist Coverage Endorsement, A471 (01-19) at page 2 of 4, ECF 20-3 at 31.

The endorsement also has a limitation of liability as follows:

> **LIMIT OF LIABILITY**
>
> 1. The most we will pay for all damages including those for care or loss of services due to bodily injury to one person in any one accident is the limit shown in the Declarations for "each person" applicable to the vehicle that the insured was occupying at the time of the accident.

*Id.* The term "bodily injury" is further defined to include death, *id.* at 3, and the Declarations page provides coverage of $100,000 per person. Joint Stipulation of Facts, ¶ 8.

**II.    Standard of Review**

These motions are governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as described by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, (1986). That standard does not change when the parties cross-move for summary judgment, with each party's motion to be determined on its own merits in accordance with the Rule 56 standard. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). Under Pennsylvania law, the interpretation of an insurance contract is a matter of law for the court. *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 323 (3d Cir. 2005).

### III.     Discussion

In GEICO's view, because the "bodily injury" giving rise to coverage must be sustained by an "insured," and "all" damages for bodily injury to "one person" in "any one accident" are limited to $100,000, its liability is capped at that amount regardless of the existence of two statutory causes of action.  The logic of GEICO's position is difficult to refute.

Claimants' first argument is that as individual beneficiaries under the Wrongful Death Act they are "persons" distinct from their son's estate, which is a separate legal entity.  That is legally correct, but still does not bring them within the language of the policy, as neither suffered a "bodily injury."  Rather, their entitlement to recover as parents is necessarily predicated upon the fatal injury suffered by their son.  The statute reinforces this, authorizing recovery of "damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another." 42 Pa.C.S. § 8301(a).

The Pennsylvania Superior Court has consistently described wrongful death claims as derivative of the injury suffered by the deceased.  *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 660 (Pa. Super. Ct. 2013); *Sunderland v. R.A. Barlow Homebuilders*, 791 A.2d 384, 390–91 (Pa. Super. Ct. 2002), *aff'd*, 838 A.2d 662 (Pa. 2003). The same can be said of a survival action.  As stated by the Superior Court in *Rickard v. Am. Nat'l Prop. & Cas. Co.*, 173 A.3d 299, 306 (Pa. Super. Ct. 2017), survival claims and wrongful death claims both "originate from the same wrongful act."  These decisions are conceptually sound, and in the absence of precedent from the Pennsylvania Supreme Court are entitled to meaningful deference.  *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996).

Claimants argue by way of analogy from the Pennsylvania Supreme Court's decision in *Tulewicz v. SEPTA,* 606 A.2d 427 (Pa. 1992), in which it held that the damage cap set forth in

Pennsylvania's Sovereign Immunity Act must be separately applied to survival actions and claims for wrongful death. But the language of the statute construed in *Tulewicz* is markedly different from the policy language here. That statutory cap applies to "[d]amages arising from the same *cause of action.*" *Id.* at 430 (emphasis added). There is no question that survival and wrongful death claims are separate actions created by the legislature with distinct measures of damages, which in some cases have entirely different beneficiaries. In contrast, the language of the contractual limitation in the GEICO policy is focused on injury to persons it insures, and sweeps into that provision all bodily injury suffered by a single person in the same accident. If the limits applied per claim, and not per victim, the coverage analysis would be far different.

Claimants next argue that the existence of two distinct claims and two beneficiaries renders the language of the limitation ambiguous, entitling them to a ruling in their favor. Well-established standards govern how courts should resolve questions of ambiguity. If a policy's language is clear, a court must enforce that language. *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004). An ambiguity exists only if contractual terms "are subject to more than one reasonable interpretation when applied to a particular set of facts," *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435 (3d Cir. 2006), and the Court of Appeals has cautioned that courts "must refrain from torturing the language of the policy to create ambiguities where none exist." *J.C. Penney Life*, 393 F.3d at 363. Mere disagreement over the meaning of the policy language does not suffice to create ambiguity. *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011). "A provision of an insurance policy is ambiguous if reasonably intelligent [people] on considering it in the context of the entire policy would honestly differ as to its meaning." *Northbrook Ins. Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir. 1982) (citing *Celley v. Mut. Benefit Health & Accident Ass'n,* 324 A.2d 430, 434 (Pa. Super. Ct. 1974)).

4

The express language of the policy leaves no room for confusion. Under the coverage provision in the UIM endorsement, there must be bodily injury to an insured to trigger liability for payment, and only the Wetzels' son suffered a bodily injury, even though other claims arose out of the accident. And the limitation provision makes clear that the most the carrier must pay for all injury to any one person is $100,000. The fact that the accident gives rise to two cognizable claims under Pennsylvania law and allows recovery by both the estate and specified statutory beneficiaries does not alter the operation of the clear language of the policy itself.[1]

Finally, the Wetzels advance what they describe as a policy argument under Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), rooted in *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131 (Pa. 2019) and *Donovan v. State Farm Mut. Auto. Ins. Co.*, 256 A.3d 1145 (Pa. 2021). The contours of the claimants' argument are not clear, but their position appears to be that the coverage limitation frustrates the intent of the legislature. Both these decisions involved stacking of underinsured benefits, a mechanism by which benefits are claimed under more than one policy. In *Gallagher,* the Supreme Court held that an exclusion for UIM coverage under policies on other vehicles in the same household was void because the exclusion operated as a de facto waiver of stacking in violation of § 1738 of the MVFRL. In *Donovan,* the Court held that a written waiver of stacking must alert an insured that stacked benefits are available under a separate policy. With only one policy available here, stacking is not an issue, so it is difficult to discern how these decisions are relevant.

---

[1] Various cases from the Pennsylvania courts addressing coverage for derivative claims are consistent with this result. *See, e.g., Smith v. Cassida*, 169 A.2d 539 (Pa. 1961); *Erie Ins. Group v. Shue,* 741 A.2d 803 (Pa. Super. Ct. 1999); *Koenig v. Progressive Ins. Co.*, 599 A.2d 690, 692–93 (Pa. Super. Ct. 1991). But none is directly controlling as each turns on the specific language of the policy providing coverage.

Claimants are correct that as a matter of public policy Pennsylvania favors the availability of underinsured coverage. But the Pennsylvania Supreme Court recently stressed that "the insurance contract controls the scope of UIM coverage." *Rush v. Erie Ins. Exch.,* 308 A.3d 780, 801 (Pa. 2024). Under Pennsylvania law, an insured seeking to void or reform a provision in an insurance contract on grounds of public policy carries a heavy burden, and can only prevail by demonstrating that the language of the contract violates a statute. *Generette v. Donegal Mut. Ins. Co.*, 957 A.2d 1180, 1190-91 (Pa. 2008). No such showing has been made here.

The total coverage available for the Wetzels' claims – $200,000 – is woefully inadequate to compensate them for the loss of their son.[2] Their counsel is to be commended for persisting and attempting to recover more, but zealous and creative advocacy cannot always be rewarded with success.

An appropriate order follows.

    /s/ Gerald Austin McHugh
United States District Judge

---

[2] GEICO insured the tortfeasor in the underlying case as well, with a liability policy providing $100,000 in coverage. The Wetzels also challenged the limitation on coverage in that policy, one governed by New Jersey law, but have since with admirable candor conceded that they cannot prevail on their argument. ECF 23 at 9, n. 1.